UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PHALBA L. ADAMS                                CIVIL ACTION

VERSUS                                         NO. 22-1577

DENIS MCDONOUGH, SECRETARY                     SECTION: "J"(2)
OF VETERANS AFFAIRS

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 15)** filed by Defendant, Denis Mcdonough, Secretary of Veteran Affairs, an opposition thereto (Rec. Doc. 16) filed by Plaintiff Phalba Adams, and Defendant's reply (Rec. Doc. 22). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

Phalba Adams ("Adams") began her employment with the Department of Veteran Affairs ("VA") as the Chief of Pharmacy Services in April 2015. During this time, Adams asserts Denis McDonough, in his official capacity as head of the VA and through his agents and supervisors, subjected her to intentional race-based employment discrimination. Specifically, Adams, an African American female, claims that VA employees engaged in mistreatment and discriminatory behavior towards her and began altering the terms and conditions of her employment because of her race. Adams further alleges that VA employees doubled her workload, accused her of

1

workplace conflict, forced her to perform duties and responsibilities of other employees, and ignored her requests for assistance.

Due to the alleged discriminatory behavior, Adams initiated contact with an equal employment opportunity ("EEO") counselor on May 13, 2020. Adams and the VA were unable to resolve her claims during this informal counseling process. On December 28, 2020, Adams filed an EEO administrative complaint which initiated the formal administrative process.

On February 11, 2021, the VA emailed Adams and her attorney, Karl Bernard, a notice of partial acceptance of her administrative EEO complaint. The complaint stated an EEO investigator would be assigned to investigate Adams's claims of employment discrimination. The letter also stated the investigator would be in contact with Adams and her attorney in order to obtain information or evidence pertinent to the complaints. On April 9, 2021, the investigator emailed written interrogatories to Adams's attorney (with Adams CC'd). The investigator noted written responses were due on April 16, 2021. After Adams and her attorney failed to submit interrogatory responses by the April 16, 2021 deadline, the investigator emailed a notice of non-compliance to Adams and her attorney. The non-compliance notice also set a new interrogatory response deadline of April 28, 2021.

On April 21, 2021, the investigator and Adams's attorney exchanged emails and had a telephone conversation regarding the administrative claim process schedule. However, both Adams and her attorney failed to submit responses by the April 28, 2021 deadline. On April 30, 2021, Adams emailed the investigator stating

she was attempting to complete the interrogatories but did not understand what certain claims were referring to. The investigator responded explaining how each claim was divided into sub-claims. Neither Adams nor her attorney submitted any responses to the interrogatories. On May 14, 2021, the investigator completed the report and closed the investigation. The investigator stated Adams failed to respond throughout the investigation, failed to provide answers to the interrogatories, and provided no testimony or evidence to substantiate her claims. Accordingly, the investigator concluded Adams failed to establish she was subjected to discrimination or harassment.

On June 22, 2021, Adams and her attorney requested a hearing before an Equal Employment Opportunity Commission ("EEOC") and Administrative Law Judge ("ALJ"). The EEOC issued an acknowledgement order on September 8, 2021. The order informed the parties of the upcoming administrative process and provided instructions on filing motions and other correspondence. The ALJ issued an order on January 10, 2022, scheduling a mandatory initial conference with Judge Nancy Graham, which was held on February 7, 2022. Adams and her attorney, however, missed the initial conference despite reminders from the ALJ about the conference via email and telephone. Adam's attorney emailed Judge Graham on February 7, 2022, stating that he had switched email addresses and only checked the email address on file "sparingly," and as a result, scheduled other matters during the initial conference period. (Rec. Doc. 15-20, at 1). Judge Graham responded stating that she

and agency counsel waited for Adams and her attorney to enter the conference and telephoned them both with no answer.

In response to his absence, the ALJ set a February 17, 2022, deadline for Adams or Bernard to provide a good-cause explanation for their failure to comply with orders for the mandatory conference and failure to file responsive pleadings to the pending motion of the Agency. On February 17, 2022, Bernard emailed the ALJ and Judge Graham stating his client no longer wished to pursue the administrative process.

On May 31, 2022, Adams filed this complaint against Denis McDonough in his official capacity as head of the VA, arguing that the Defendant engaged in "race-based employment discrimination and retaliation." (Rec. Doc. 1, at 3).  In the instant motion, Defendant asserts that this Court should dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or alternatively for summary judgment. (Rec. Doc. 15, at 4-5).  Specifically, the Defendant argues that "Adams failed to engage in good faith participation during the administrative review of her reemployment discrimination claims, which constitutes a failure to exhaust her administrative remedies." *Id.* at 4-5.  In opposition to the defendant's motion to dismiss, Adams avers she only had 89 days to complete the administrative process as opposed to the required 180 days. (Rec. Doc. 16, at 3-4). Additionally, Adams asserts that after filing her complaint, her counsel contracted COVID-19, and she underwent emergency oral surgery. *Id.* at 2-3. In their reply brief, the Defendant argues Adams and her attorney were available to engage in good faith

for the participation for the critical times of the administrative process, and Adams and her attorney failed to request extensions during the investigatory phase and after the ALJ scheduled a hearing. (Rec. Doc. 22).

## LEGAL STANDARD

To survive a Rule12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Adams alleges Defendant engaged in race-based employment discrimination and retaliation under Title VII. (Rec. Doc. 1, at 3). Defendant asserts the claims

should be dismissed because Adams failed to participate in the required EEO administrative process in good faith depriving the VA of an opportunity to evaluate and resolve her claims. (Rec. Doc. 15, at 1-2).

Title VII plaintiffs must exhaust their administrative remedies before seeking judicial relief from discriminatory employment practices. *See Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) (*citing Davis v. Ft. Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018)); *see also Moore v. Napolitano*, No. 07-2666, 2009 WL 4723169, at *5 (E.D. La. Dec. 3, 2009) (Vance, J.) (citations omitted) (finding federal employee did not exhaust administrative remedies in connection to a Title VII claim). Administrative exhaustion provides an opportunity for voluntary compliance before a civil action is instituted. *Davis*, 893 F.3d at 307. In the Fifth Circuit, "Title VII's administrative exhaustion requirement is not a jurisdictional bar to suit but rather a prudential prerequisite. . . ." *Id.* at 308; *see Stroy*, 896 F.3d at 698 (administrative exhaustion "is only a precondition to filing suit, subject to waiver or estoppel defenses.").

In determining the scope of the exhaustion requirement, two competing policies are implicated. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). On the one hand "because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Id.* On the other hand, "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788-89.

6

To timely initiate a Title VII employment discrimination claim, the federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory …" *Moore*, 2009 WL 4723169, at *4 (citations and internal quotation marks omitted). If the administrative remedies are properly exhausted and regardless of their substantive result, a plaintiff is entitled to a civil trial regarding their discrimination claims. *Id.*

The exhaustion analysis is "fact-intensive," examining the substance and not merely the four corners of the administrative charge. *Moore*, 2009 WL 4723169, at *5. Exhaustion also requires a plaintiff asserting such claims against the federal government to have engaged in "good faith participation" during the administrative process. *See, e.g., Martinez v. Dep't of U.S. Army*, 317 F.3d 511 (5th Cir. 2003); *Barnes v. Levitt*, 118 F.3d 404 (5th Cir. 1997); *Francis v. Brown*, 58 F.3d 191 (5th Cir. 1995); *Munoz v. Aldridge*, 894 F.2d 1489 (5th Cir. 1990); *Johnson v. Bergland*, 614 F.2d 415 (5th Cir. 1980); *Thomas v Napolitano*, 449 F. App'x 373 (5th Cir. 2011); *Farve v. Potter*, 342 F. App'x 3 (5th Cir. 2009); *Merriman v. Potter*, 251 F. App'x 960 (5th Cir. 2007). Failure to engage in a good faith effort to cooperate with an administrative agency may preclude exhaustion and judicial review. *See Barnes*, 118 F.3d at 409 (citing *Johnson*, 614 F.2d at 418). In determining whether a federal employee has participated in good faith with the administrative process, the court takes a "common sense" approach "geared to the functional demands of dispute resolution." *Barnes*, 118 F.3d at 409 (citing *Munoz*, 894 F.2d at 1493). While "[t]here is no precise definition of good-faith participation," a finding that a plaintiff failed to participate

in good faith typically requires the plaintiff's refusal to cooperate, failure to cooperate, or "some sort of obstruction by the plaintiff." *Thomas*, 449 F. App'x at 375; *see Barnes*, 118 F.3d at 409-10.

In *Barnes v. Levitt*, the Fifth Circuit directly addressed exhaustion of administrative remedies, and held the plaintiff failed to engage in good faith participation. *Barnes*, 118 F.3d at 409-10. In that case, the plaintiff, an African-American female, filed an EEO administrative claim asserting gender and racial discrimination and sexual harassment. *Id.* at 409-11. After the filing of the EEO administrative claim, the agency requested specific information from plaintiff. *Id.* at 407-08. However, she and her attorney failed to provide responses. *Id.* The agency continued with the investigation and interviewed agency witnesses and former employees despite the lack of cooperation from the plaintiff and her attorney. *Id.* While investigating the complaint, the agency repeatedly requested plaintiff and her attorney provide specific information regarding the complaint and warned that failure to cooperate could cause dismissal of the complaint. *Id.* at 408-09. Plaintiff subsequently agreed to provide a deposition; however, shortly thereafter, the plaintiff informed the agency that she would not attend the deposition because she had a surgery scheduled. *Id.* The plaintiff made no attempt to reschedule and refused to extend the 180-day period for filing suit. *Id.* Accordingly, after the plaintiff's continued non-responsiveness, the agency dismissed the administrative complaint for her failure to cooperate. *Id.* The Fifth Circuit concluded "that Barnes did not act in good faith or make reasonable efforts to provide the necessary relevant information

to the [agency] after filing her formal complaint." *Id.* at 409-10. Her lack of good faith included, in part, repeatedly failing to answer questions from the agency. *Id.* Therefore, the Fifth Circuit affirmed the dismissal of the certain claims where plaintiff failed to exhaust administrative remedies.

In this case, Adams failed to exhaust her administrative remedies and engage in the EEO administrative process in good faith. Defendant asserts that, because Adams wholly failed to engage in the EEO administrative process, she failed to exhaust her administrative remedies, which is a prerequisite to filing a Title VII lawsuit in federal court. (Rec. Doc. 15, at 1-2). In response, Adams argues she did not receive the 180-day period to complete the investigation, and instead, only received 89 days to participate in the investigative process. (Rec. Doc. 16, at 3). Additionally, Adams argues that due to personal circumstances such as her counsel contracting COVID-19 and undergoing abdominal surgery and her oral surgery, Adams was deprived of the opportunity to engage in good faith participation. *See* (Rec. Doc. 16). Notably, Adams does not argue she engaged in the administrative process after filing her complaint, but she states personal circumstances prevented her participation.

First, Defendant correctly states that the 180 days for the administrative complaint is the *earliest* time at which Adams could have filed a lawsuit in federal court. *See* 29 C.F.R. § 1614.407(b) ("A complainant who has filed an individual complaint… is authorized under title VII … to file a civil action in an appropriate United States District Court … After 180 days from the date of filing an individual … complaint if agency final action has not been taken…."). In *Munoz v. Aldridge*, the

Fifth Circuit described this 180-day time period as the amount of time that the law requires a plaintiff to spend in the administrative phase. 894 F.2d 1489, 1492 (5th Cir. 1990). However, the *Munoz* plaintiffs spent "far longer" than 180 days in the investigatory phase. *Id.* In *Munoz*, the court found that plaintiff could have engaged in good faith participation in the administrative process beyond 180-days if plaintiff and her attorney had chosen to do so. In this case, Plaintiff similarly could have engaged in the administrative process or requested more time but chose not to engage in the administrative process. In an April 12, 2021 email from the investigative case manager, the case manager wrote that the agency "has to complete the investigation within 180 days of the date filed … unless an extension is requested." (Rec. Doc. 17, at 7).

Second, in response to Defendant's argument that Adams failed to exhaust her administrative remedies, Adams argues that due to personal circumstances she was deprived of the opportunity to engage in good faith participation. *See* (Rec. Doc. 15, 16). *Barnes* is instructive on this issue. As in *Barnes*, Adams repeatedly failed to cooperate with the EEO investigation. Here, the investigator notified Adams and her attorney of the deadline for the interrogatories. After Adams and her attorney failed to submit any response, the investigator issued a notice of non-compliance. After an exchange of emails and a telephone conversation between Adams's attorney and the investigator, a new interrogatory response deadline was set. Adams and her attorney again failed to submit responses by this deadline. The investigator completed the

investigation, noting Adams and her attorney failed to respond throughout the investigation and provided no testimony or evidence to substantiate her claims.

Adams and her attorney also requested a hearing before an EEOC ALJ. Adams's attorney missed the mandatory initial conference stating he had switched email addresses. The ALJ subsequently set a new deadline for Adams and her attorney to provide a good-cause explanation for their failure to comply with orders for the mandatory conference and failure to file responsive pleadings to the pending motion of the agency. However, instead of providing an explanation, Adams' attorney emailed the ALJ stating Adams no longer wished to pursue the administrative process.

Similar to the plaintiff in *Barnes*, Adams did not ask for extensions during the investigatory phase or after the ALJ hearing. Rather, Adams and her attorney repeatedly failed to communicate with investigators or submit responses to the investigation. If Adams or her attorney felt too rushed or overwhelmed by the administrative deadlines, whether due to health or other personal reasons, Adams or her attorney could have requested more time in order to engage in good faith participation. Rather than engaging in the administrative process after several requests to do so, Adams, to the contrary, emailed the ALJ and stated that she no longer wished to pursue a decision but rather desired to file suit in federal court. (Rec. Doc. 15).

Additionally, while personal circumstances did arise for Adams and her attorney during the investigation, both had ample time to coordinate responses in the

interrogatory phase which lasted approximately 35 days. Adams does not allege that she was unable to communicate with her attorney during this time or that her medical condition prevented her from working on responses to the investigator's interrogatories. Again, Adams or her attorney could have requested more time to engage in the crucial phases during the investigative process but failed to do so. Like the plaintiff in *Barnes,* Adams and her attorney here failed to make reasonable efforts to provide the necessary relevant information to the agency after filing her formal complaint. Therefore, Adams failed to exhaust her administrative remedies and her claims must be dismissed.

## **<u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 15)** is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 19th day of October, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE